IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



FILED
MAR 31 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

GUIDESTAR HEALTH SYSTEMS, }
INC., }
 }
    Plaintiff, }
 }
v. }
 }
AT&T CORP., }
 }
    Defendant. }

CASE NO. CV 02-B-1234-S

ENTERED
APR - 1 2003

## MEMORANDUM OPINION

Currently before the court is a Motion to Dismiss filed by defendant, AT&T Corp. ("defendant" or "AT&T"). Plaintiff, Guidestar Health Systems, Inc. ("plaintiff" or "Guidestar"), asserts claims for breach of a contract for communications services it entered into with defendant. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss is due to be granted.

### I. FACTUAL SUMMARY

On March 24, 200, Guidestar and AT&T entered into a contract under which AT&T agreed to provide certain telecommunications service to Guidestar. (Compl. ¶ 3.) Guidestar contends that, at the time the parties agreed to the contract, AT&T accepted all responsibility, *i.e.* agreed not to charge plaintiff, for switching Guidestar's service from MCI to AT&T. (Compl. ¶ 4.) Under the terms of the contract, the parties agreed that the contract services

17

would be provided, "subject to the rates, terms and conditions" in AT&T Contract Tariff No. 13125 ("Tariff 13125").[1] (Contract.)

Approximately three months after the parties signed the contract, AT&T informed Guidestar, allegedly for the first time, that there would be an installation charge for the "T1 line required by Guidestar to receive the dedicated rates." (Compl. ¶ 5.) Because AT&T allegedly promised to take responsibility for all costs associated with switching Guidestar's service to AT&T, Guidestar did not pay the installation charge. (Compl. ¶ 6.) AT&T refused to switch Guidestar's service, and, as a result, plaintiff continued to obtain the service from MCI at a higher rate than that offered by AT&T. (Compl. ¶ 7.) Plaintiff filed this lawsuit to recover the difference between the rates charged by MCI and the proposed rates it would have been charged under its agreement with AT&T, an amount plaintiff claims equals $153,036.36.[2] (Compl. ¶ 8.)

Prior to filing this lawsuit, on July 16, 2001, Guidestar filed a complaint with the Federal Communications Commission ("FCC"), claiming that AT&T owed plaintiff the difference between the rates charged by MCI and those reduced fees it would have paid under contract with AT&T for the same service.[3] (FCC Compl.)

---

[1]One pertinent provision of Tariff 13125 provides that AT&T waives certain installation charges. (Tariff 13125, at 4.)

[2]Plaintiff contends this is the amount "due by Contract." (Compl., Prayer for Relief.) The contract directly references Tariff 13125, and states that the service provided under the contract is subject to the rates included in that Tariff. (*See* Contract.) As discussed below, a claim to enforce the terms of the tariff necessarily arises under federal law. Furthermore, in its brief, plaintiff appears to argue that it seeks merely to enforce the provisions of Tariff 13125. (*See* Pl.'s Br.)

[3]Before the FCC, Guidestar claimed that despite AT&T's representation that it would take responsibility for switching plaintiff's service from MCI, AT&T charged a fee for installation of the service Guidestar ordered. (*See* FCC Compl.) Guidestar refused to pay the installation charge, and, as a result, was required to continue under its prior agreement with MCI

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss, the court must accept the allegations of the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.*; *see also Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976).

## III. DISCUSSION

### 1. State Law Claims

AT&T is a telecommunications common carrier regulated by the FCC and subject to the requirements of the Federal Communications Act ("FCA"), 47 U.S.C. § 151, *et seq*. Pursuant to § 203(a) of the FCA, AT&T was required to and did file tariffs that showed all charges for services offered to its customers, as well as "the classifications, practices and regulations affecting such charges." "The rights as defined by the tariff[s] cannot be varied or enlarged by either contract or tort of the carrier," *Mailsin Indus., U.S. Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 130 (1990), and any state law claims seeking to enforce a contractual provision that differs from the filed tariff is preempted by federal law. *Am. Tel. & Tel. Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 226 (1998). However, "[w]here a plaintiff alleges breach of contract based on the conduct of a common carrier that is unrelated to the rates charged or the services rendered by

---

thereby incurring expenses well in excess of the rate proposed by AT&T for the same service. (*Id.*)

3

that carrier . . . a state's common law of contracts may be applicable." *Sapp v. AT&T Corp.*, 215 F. Supp. 2d 1273,1276 (M.D. Ala. 2002).

In this lawsuit, plaintiff seeks to recover damages it allegedly incurred because AT&T failed to abide by its representation that there would be no installation charge for the contract service, and because AT&T refused to provide that service when Guidestar did not pay the installation charge. Tariff 13125 clearly addresses the amount AT&T is allowed to charge for installation of the service Guidestar ordered. Therefore, the court finds that in this case, unlike *Sapp*, plaintiff alleges breach of contract based on the conduct of AT&T as it relates to the rates defendant charged or the service it rendered. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484, 489 (7th Cir. 1998) ("[A]lthough a carrier's refusal to honor the terms of a tariff . . . will often arise in the context of a broken contract, the customer's claim for damages resulting from that refusal is necessarily based on the filed tariff . . . .").

Thus, applying the filed rate doctrine, the court makes the following finding: To the extent that plaintiff's state law claims seek to enforce certain rates for service or to enforce certain privileges as a condition of such service, and those rates or privileges differ from the provisions of defendant's tariff, those claims are preempted by the filed-rate requirements of the FCA. *See Central Office*, 524 U.S. at 226 (1998).

In its brief, plaintiff contends that the terms of the contract do not conflict with the provisions of the tariff relating to installation charges. Put another way, plaintiff claims that the contract and tariff both provide that there shall be no installation charge for the contract service, and its lawsuit seeks merely to enforce that provision. However, if plaintiff seeks to enforce the rates provided for in the contract, and those rates mirror the provisions of the tariff, its only

4

recourse is to assert claims arising under federal law, as there is no state law mechanism for enforcement of defendant's tariffs. *See Cahnmann*, 133 F.3d at 487-88 (finding that suits to enforce a filed tariff arise under federal law); *id.* at 489 ("[S]ince [the tariff] define[s] the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce."); *see also Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166 (9th Cir. 2002). Therefore, plaintiff's state law claims are due to be dismissed.

**2. Federal Claims**

Under the FCA, it is unlawful for a carrier to collect from its customers an amount greater than that stated in a filed tariff for the applicable service, 47 U.S.C. § 203(c), and anyone damaged by conduct deemed unlawful under the FCA can file a complaint with the FCC or in federal district court. *Id.* §§ 206, 207. If, without so finding, Tariff 13125 provides that there shall be no installation fee, and AT&T in fact charged plaintiff an installation fee, plaintiff could potentially assert a federal claim to enforce the tariff. *See Brown*, 277 F.3d at 1169 (stating that plaintiff who seeks to enforce an existing, FCC-approved tariff has properly stated a claim under federal law). However, the court is of the opinion that, to the extent plaintiff's First Amended Complaint states a federal claim, if it does at all, that claim is due to be dismissed.

In *Mexiport, Inc. v. Frontier Comm. Servs.*, 253 F.3d 573, 575 (11th Cir. 2001), the Eleventh Circuit held that because the plaintiff had filed a complaint[4] with the FCC "over a

---

[4]The fact that Guidestar filed only an informal complaint does not affect the court's ruling. *See Mexiport*, 253 F.3d at 575 ("[T]he language of 47 U.S.C. § 207 is unambiguous. The statute allows a complainant to file a complaint with the FCC *or* in federal district court but not both. The statute does not distinguish between informal and formal complaints, and we will not read such a distinction into it. Because Mexiport filed a complaint with the FCC it is precluded from also bringing an action in federal district court.")

disagreement [with defendant] about a toll free '800' number," it was precluded from later bringing an action in federal district court asserting claims against defendant. *See also* 47 U.S.C. § 207. The opinion in *Mexiport* is directly on point. Guidestar filed an informal complaint with the Federal Communications Commission ("FCC") against defendant on July 16, 2001, asserting claims identical to the ones before this court. Therefore, relying on *Mexiport*, the court finds that plaintiff's federal claims, if any, are due to be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Dismiss is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 31st day of March, 2003.

_____
SHARON LOVELACE BLACKBURN
United States District Judge

6